UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID SANCHEZ and MARCELO PEREZ, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:24-cv-03925 |
| IOWA FERTILIZER COMPANY LLC, | § § § | |
| Defendant. | § § | |

## DEFENDANT'S OPPOSED MOTION FOR LEAVE TO DESIGNATE RESPONSIBLE THIRD PARTY

Pursuant to Section 33.004(a) of the Texas Civil Practice and Remedies Code, Defendant Iowa Fertilizer Company, LLC ("IFCO") files this Opposed Motion for Leave to Designate JV Industrial Companies, LLC ("JVIC") as a Responsible Third Party ("Motion") and, in support of the Motion, respectfully shows the Court as follows:

## I.    Summary of the Argument

JVIC should be designated as a responsible third party regarding Plaintiffs' claims of negligence and gross negligence as the party solely and/or contributorily responsible for Plaintiffs' alleged injuries. At the time of the incident, JVIC, Plaintiffs' employer, was *actually* and *contractually* responsible for Plaintiffs' work at IFCO's facility. JVIC was obligated to train, supervise, instruct, and ensure its employees adhered to all applicable regulations, precautions, and procedures. As such, JVIC controlled and directed the work

in question and owed Plaintiffs a duty of care which JVIC breached, proximately causing Plaintiffs' alleged injuries.

## II.    Statement of the Issue

To assess IFCO's Motion, the Court must determine whether IFCO has timely plead sufficient facts to support the designation of JVIC as a responsible third party pursuant to Section 33.004(a) of the Texas Civil Practice and Remedies Code.

## III.    Factual and Procedural Background

IFCO maintains a facility in Wever, Iowa (the "Facility") where it contracted with JVIC to provide materials and labor to IFCO as a contractor for specified construction projects. JVIC was contracted pursuant to a Master Service Agreement entered on December 9, 2021 ("Master Service Agreement"). *See* Exhibit A, Excerpted Master Service Agreement. Plaintiffs David Sanchez ("Sanchez") and Marcelo Perez ("Perez") (collectively referred to herein as "Plaintiffs") were working at the Facility as employees of JVIC.

Under the Master Service Agreement, JVIC acknowledged that it was obligated to ensure its employees were properly trained and adhered to "all applicable safety regulations, precautions, and procedures…whether or not suggested or required by safety associations…." *See* Exhibit A, Art. 4.0(a). Article 4.0(a) of the Agreement provides:

> [JVIC] covenants, represents, and warrants that [JVIC]…**has fully trained PERSONNEL** capable of efficiently and **safely operating equipment** in connection with performing WORK for [IFCO]… that all WORK performed by [JVIC] hereunder shall be conducted **in accordance with all applicable safety regulations, precautions, and procedures** and by employing and providing all PERSONNEL all necessary or desirable protective equipment and the latest safety and protective equipment devices, **whether or not**

**suggested or required by safety associations, government agencies, municipalities, or otherwise. [IFCO] is relying upon [JVIC]'s skill and expertise** as an independent contractor **to properly train its employees in safety** and to maintain equipment furnished by [JVIC] as described above in a safe manner.

*Id.* (emphasis added).

On or about September 15, 2023, Plaintiffs were instructed to perform a first line break to remove a control valve. Prior to performing the first line break, Joe Dominguez, a safety representative of IFCO, instructed Carlos Villareal, JVIC's foreman and Plaintiffs' supervisor, that Plaintiffs needed to have their "full-face masks taped up before breaking the first bolt." *See* Exhibit B, Joe Dominguez September 16, 2023 Witness Statement. Specifically, Plaintiffs needed to be fully geared up in chemical suits, boots, and breathing air masks. *Id.*

Plaintiffs did not have their "full-face masks taped up" at the time of the line break and were allegedly exposed to ammonia as a result (the "Incident"). Plaintiffs and other JVIC employees admitted Plaintiffs did not perform the tasks with the appropriate PPE equipment. *See* Exhibit C, Carlos Villareal September 16, 2023 Interview Summary; Exhibit D, Juan Flores September 16, 2023 Witness Statement ("there were only 2 guys under fresh air with no suits on"); Exhibit E, Marcelo Perez September 16, 2023 Witness Statement ("we start doing it [breaking the line] [with] no chemical suit and fresh air").

To derate their PPE gear, JVIC was required to complete the "Line/Equipment Opening Checklist" and obtain project manager and site safety supervisor approval to downgrade their gear—they failed to do so. Exhibit F, Line/Equipment Opening Checklist (no signatures provided under "Signatures must be obtained for any work beyond First

3

Break where crew will not be utilizing the same First Break PPE"). More importantly, JVIC's foreman, Mr. Villareal, made the final decision regarding Plaintiffs' PPE and permitted Plaintiffs to derate their PPE from the required full PPE equipment, without obtaining the proper approvals. *See* Exhibit C ("Villareal was persuaded [by Plaintiffs to derate the gear] but encourage[d] them to at least wear their supplied [air] respirator and [Plaintiffs] complied.").

Additionally, JVIC was responsible for determining whether the valves were safe to open. Mr. Villareal, JVIC's foreman, provided a statement following the Incident noting that: (1) *he* confirmed both valves were in the open position which gave him confidence the valve utilized to verify zero energy was appropriate, (2) *he* checked the valve and had no concern with trapped pressure, and (3) *he* informed his team—Plaintiffs—that he walked the system and it was safe for them to open the valve. *Id.*

Plaintiffs allege that because of these actions—both the lack of safety gear and representation of safe conditions, they were seriously injured and burned from the alleged ammonia release. Dkt. 1, ¶¶ 13, 19. On October 14, 2024, Plaintiffs filed this lawsuit against IFCO alleging claims of negligence and gross negligence. Based on JVIC's actions, IFCO files the instant Motion.

## IV.    Legal Authority

Section 33.004(a) of the Texas Civil Practice and Remedies Code permits a defendant "to designate a person as a responsible third party" in a lawsuit, so long as the defendant does so at least 60 days before trial. TEX. CIV. PRAC. & REM. CODE § 33.004(a); *Rodi Marine, LLC v. Lighthouse Marine, LLC*, 729 F. Supp. 3d 696, 698 (S.D. Tex. 2024)

4

(court relying on the requirements of Section 33.004 in finding for the movant's timely designation of a responsible third party). A defendant may designate as a responsible third party "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought, whether by a negligent act or omission… by other conduct or activity that violates the applicable legal standard, or by any combination of these." TEX. CIV. PRAC. & REM. CODE § 33.011(6); *PEMEX Exploracion y Produccion v. Murphy Energy Corp.*, 923 F. Supp. 2d 961, 980 (S.D. Tex. 2013).

A motion to designate responsible third parties is not a motion to add or join a party. TEX. CIV. PRAC. & REM. CODE § 33.004(i)(1) ("The filing or granting of a motion for leave to designate a person as a responsible third party or a finding of fault against the person does not by itself impose liability on the person…."). "Rather than require formal joinder, § 33.004 provides a mechanism to designate responsible third parties who then may be apportioned fault." *Muniz v. T.K. Stanley, Inc.*, Civ. A. No. L-06-cv-126, 2007 WL 1100466, at *3 (S.D. Tex. Apr. 11, 2007) (internal quotations omitted). "A court shall grant leave to designate the named person as a responsible third party unless the objecting party establishes … the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure…."[1] TEX. CIV. PRAC. & REM. CODE § 33.004(g); *PEMEX Exploracion y Produccion,* 923 F.Supp.2d at 980.

---

[1] Texas follows a "fair notice" standard for pleading. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 896 (Tex. 2000). Generally, a pleading provides fair notice of a claim when an opposing attorney of reasonable competence can examine the pleadings and ascertain the nature and basic issues of the controversy and the relevant testimony. *Auld,* 34 S.W.3d at 896; *State Fid. Mortgage Co. v. Varner,* 740 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1987, writ denied).

## V.    IFCO Has Plead Sufficient Facts to Designate JVIC As a Responsible Third Party

JVIC should be designated as a responsible third party in this case because sufficient facts exist and have been pled to demonstrate JVIC's negligence and responsibility as it relates to Plaintiffs' claims. To establish Plaintiffs' claims of negligence and gross negligence, Plaintiffs must prove: (1) a legal duty was owed to them, (2) the duty was breached, and (3) the breach was the actual and proximate cause of their injuries. *Mutuba v. Halliburton Co.,* 949 F. Supp. 2d 677, 681 (S.D. Tex. 2013).

Here, JVIC had a duty to properly train, supervise, and instruct Plaintiffs regarding work-related tasks at the Facility. *See* Exhibit A, Art. 8.0(a). Article 8.0(a) of the Agreement provides:

> In the performance of any WORK by [JVIC] for [IFCO], [JVIC] shall be deemed an independent contractor. [IFCO] shall have no right or authority to supervise or give directions or instructions to the employees, agents, or representatives of [JVIC]. [JVIC] retains the authority and right to direct and control all the details of the WORK….

*Id.* "An employer has a duty to adequately hire, train, and supervise employees." *Mutuba,* 949 F. Supp. 2d at 685; *see also Allen v. A & T Transp. Co.*, 79 S.W.3d 65, 70 (Tex. App.— Texarkana 2002, pet. denied) ("An employer has a duty to adequately hire, train, and supervise employees. The negligent performance of those duties may impose liability on an employer if the complainant's injuries result from the employer's failure to take reasonable precautions to protect the complainant from the misconduct of its employees.").

As Plaintiffs' supervisor, Mr. Villareal had a duty to ensure JVIC employees adhered to safety directives. Exhibit A, Art. 4.0(a). As demonstrated by the witnesses' statements and JVIC's actual and contractual obligations, JVIC disregarded Plaintiffs' safety and contributed to Plaintiffs' alleged injuries. Specifically, JVIC derated Plaintiffs' PPE [safety] gear *after being explicitly instructed* to have Plaintiffs fully geared up in chemical suits, boots, breathing air masks, and "full-face masks taped up before breaking the first bolt." *See* Exhibit B. JVIC further confirmed that the valves were in a safe position to open and for Plaintiffs to proceed with breaking the line. *Id.*

Plaintiffs' alleged exposure was and is directly correlated to JVIC's (and Plaintiffs') failure to adhere to clear directives from IFCO's safety representative. Plaintiffs assert that these very tasks contributed to their injuries by alleging acts and omissions of:

- Exposing Plaintiffs to dangerous ammonia and/or other chemicals introduced into the piping;

- Falsely representing that the piping had been cleared of ammonia and/or other chemicals;

- Falsely representing that it was safe to open the piping and to continue opening the piping at all times;

- Failing to abide by company policy and procedures;

- Failing to [abide by the] safety plan and coordinate the work;

- Failing to address safety issues;

- Failing to ensure the work was properly supervised;

- Failing to ensure the workers were properly trained;

- Failing to ensure workers had sufficient equipment;

7

- Failing to ensure company standards and safety programs were appropriate and adequate, and/or to ensure the standards and requirements they imposed were followed;

- Negligent recommendation of how to do work and work requirements;

- Negligent provision of training and/or failure to provide training;

- Failure to have adequate safety and operating policies in place and imposing inadequate safety and operating policies; and

- Failing to ensure all workers on site were fully capable to perform their duties.

Dkt. 1, ¶ 19. This is not an exhaustive list of the allegations provided in Plaintiffs' Complaint that directly relate to some action or inaction of JVIC. *See id*. It is, however, enough to demonstrate that JVIC caused or contributed to Plaintiffs' injuries. *See* TEX. CIV. PRAC. & REM. CODE § 33.011(6).

There is sufficient evidence that JVIC breached its legal duty to Plaintiffs. As Plaintiffs' employer, JVIC had a duty to ensure JVIC employees were properly trained and adhered to safety measures and practices. JVIC was negligent in carrying out its duties and Plaintiffs were injured as a result of JVIC's negligence. JVIC's negligence and/or gross negligence in the employment, training, instruction, and supervision of Plaintiffs proximately caused or contributed to their alleged injuries.

IFCO is entitled to have the jury determine the percentage of responsibility attributable to JVIC and has sufficiently plead facts supporting same. TEX. CIV. PRAC. & REM. CODE § 33.003; *N. Marine Underwriters, Ltd. v. FBI Exp., Inc.*, 697 F. Supp. 2d 695, 706, n. 6 (S.D. Tex. 2009) (granting movant's responsible third party motion in negligence action). IFCO anticipates additional evidence will be provided in Plaintiffs' discovery responses, Plaintiffs' depositions, and other discovery to be conducted in this lawsuit that

8

further demonstrate JVIC's negligence. Accordingly, IFCO reserves the right to supplement this designation of responsible third parties.

## VI.    Conclusion

Based on the foregoing, Defendant Iowa Fertilizer Company, LLC requests that the Court GRANT its Motion for Leave to Designate JV Industrial Companies, LLC as a responsible third party, that IFCO be given leave to make said designations, and for such other and further relief to which IFCO may be entitled.

Respectfully submitted,

BAKER & HOSTETLER LLP

By:  /s/ *James E. Phillips*
    Gregory C. Ulmer
    *Attorney-in-Charge*
    SDTX No. 19827
    James E. Phillips
    SDTX No. 906115
    Julia Bennett-Jean
    SDTX No. 3193122
    811 Main Street, Suite 1100
    Houston, Texas 77002
    Telephone: (713) 751-1600
    Facsimile:  (713) 751-1717
    gulmer@bakerlaw.com
    jphillips@bakerlaw.com
    jbennettjean@bakerlaw.com

**ATTORNEYS FOR DEFENDANT
IOWA FERTILIZER COMPANY LLC**

4934-5097-2693.14

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on February 19, 2025, I consulted with Plaintiffs' counsel regarding this motion, and he communicated that Plaintiffs were opposed to the motion and relief sought therein.

_/s/ James E. Phillips_
James E. Phillips

## **CERTIFICATE OF SERVICE**

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on February 19, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of this filing to all parties and counsel of record in this matter.

_/s/ James E. Phillips_
James E. Phillips

4934-5097-2693.14

# Exhibit A

DocuSign Envelope ID: C12EF5D9-B32A-4CF9-8F56-E0E0F1E6BD96



SECTION I

CONDITIONS OF CONTRACT

to

MASTER SERVICE AGREEMENT FOR Turnaround Services

No. 21-160-JV Industrial Companies

NOTICE:    THIS  CONTRACT  CONTAINS  INDEMNIFICATION,  RELEASE, ASSUMPTION  OF  LIABILITY,  AND  HOLD  HARMLESS  PROVISIONS,  SOME  OF WHICH  ARE  IN  ARTICLE  22.0  (INDEMNITY  AND  RISK  ALLOCATION)  AND  THE REMAINDER OF WHICH ARE FOUND THROUGHOUT THE CONTRACT.

## SECTION I – CONDITIONS OF CONTRACT

This MASTER SERVICE AGREEMENT FOR Services (the "MASTER AGREEMENT") is made between the following parties on the nineth  day of December 2021:

**Iowa Fertilizer Company, LLC**, a limited liability company formed under the laws of Delaware and  having  its  registered  office  at  3550  180th  Street,  Wever  Iowa,  52658,  hereinafter  called "COMPANY",  entering  into  this  MASTER  AGREEMENT  on  behalf  of  itself  and  its AFFILIATES (as defined in Article 1 herein);

**and**

**JV Industrial Companies, LLC**, a limited liability company formed under the laws of Texas (company number Tax No. Type Tax ID#76-0660821) and having its registered office at 3741 Red Bluff Road, Pasadena, Texas 77503, hereinafter referred to as "CONTRACTOR".

COMPANY and CONTRACTOR are hereinafter sometimes referred to individually as a PARTY or collectively as the PARTIES.

**WHEREAS**:

(A)    COMPANY is engaged in the business of manufacturing and marketing certain products, and, in the course of such operations, regularly and customarily enters into contracts with independent contractors for the performance of services relating thereto;

(B)    COMPANY and its AFFILIATES may from time to time engage CONTRACTOR to perform services; and

(C)    CONTRACTOR has the expertise, facilities, equipment, and fully trained personnel capable of performing such services in a safe, proper, and workmanlike manner for COMPANY and its AFFILIATES.

NOW,  THEREFORE,  IN  CONSIDERATION  of  the  foregoing  recitals  and  mutual  promises, conditions, and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the PARTIES mutually agree as follows:

## 1.0    DEFINITIONS

The following definitions shall be used for the purpose of interpreting the CONTRACT.

(a)    "**AFFILIATE**" shall mean, with respect to either PARTY, any individual, partnership, joint venture, firm, corporation, limited liability company, trust, or

DocuSign Envelope ID: C125F5D9-B324-4C59-8F56-E0E0E1E6BD96

ORDER is terminated or completed in accordance with the requirements of the CONTRACT. CONTRACTOR or CONTRACTOR's AFFILIATES shall perform the WORK in conformity with the schedule and achieve COMPLETION by the scheduled COMPLETION date as identified in the PURCHASE ORDER.

(e)     <u>PURCHASE ORDER Terms</u>.  In the event that any provision contained in this MASTER AGREEMENT is expressly supplemented or varied by the PARTIES pursuant to a PURCHASE ORDER, the terms contained in any such PURCHASE ORDER shall take precedence over the terms contained in this MASTER AGREEMENT, but only to the extent expressly agreed by the applicable COMPANY PARTY and CONTRACTOR in the PURCHASE ORDER.

## 4.0    REPRESENTATIONS, WARRANTIES AND COVENANTS

(a)     <u>CONTRACTOR Warranties</u>.  CONTRACTOR covenants, represents, and warrants that CONTRACTOR is regularly and customarily engaged and is experienced in the WORK, and has fully trained PERSONNEL capable of efficiently and safely operating equipment in connection with performing WORK for a COMPANY PARTY; that CONTRACTOR regularly conducts training and safety programs; that all WORK performed by CONTRACTOR hereunder shall be conducted in accordance with all applicable safety regulations, precautions, and procedures and by employing and providing all PERSONNEL all necessary or desirable protective equipment and the latest safety and protective equipment devices, whether or not suggested or required by safety associations, government agencies, municipalities, or otherwise. The applicable COMPANY PARTY is relying upon CONTRACTOR's skill and expertise as an independent contractor to properly train its employees in safety and to maintain equipment furnished by CONTRACTOR as described above in a safe manner.  The warranties made by CONTRACTOR shall each be construed separately on their own terms and be in addition to and not in substitution for express or implied warranties or other rights provided by law or in equity.

(b)     <u>DELIVERABLES</u>.  CONTRACTOR GROUP covenants, represents, and warrants that, for the WARRANTY PERIOD, each DELIVERABLE:  (i) will be new; (ii) will be free from DEFECTS; (iii) will be merchantable and  as specified  by COMPANY PARTY ; (iv) will be free of all malware, viruses and all other malicious code, disabling code, or code that causes either the DELIVERABLE or any product into which the DELIVERABLE is incorporated to perform in an unintended manner; (v) will not infringe on any Intellectual Property right of any THIRD PARTY; and (vi) will strictly comply with any SPECIFICATIONS provided to CONTRACTOR in accordance with the CONTRACT or, where no specific purpose is defined, in fulfillment of the application for which it was designed.  In addition to the foregoing warranties, with respect to machinery, equipment, materials, or other products purchased from THIRD PARTIES, CONTRACTOR GROUP shall assign to the applicable COMPANY PARTY, and make every possible effort to assist such COMPANY PARTY in obtaining, all

accident drug or alcohol testing sponsored by CONTRACTOR GROUP, CONTRACTOR GROUP's insurer, COMPANY GROUP, or COMPANY or any COMPANY AFFILIFATE's insurer to be reviewed by legal counsel and other representatives of the COMPANY or such AFFILIFATE; (iii) a representative from COMPANY GROUP to collect and remove evidence for safekeeping; and (iv) if requested by the applicable COMPANY PARTY, such COMPANY PARTY to test those PERSONS within CONTRACTOR GROUP who were present at the time of the accident for drugs or alcohol.

(q)     Inspection of COMPANY Materials. CONTRACTOR shall closely and diligently inspect all ITEMS and EXISTING PROPERTY for all obvious and hidden faults, damages, dangers, or LATENT DEFECT(S), and immediately report the same in writing to the applicable COMPANY PARTY. The COMPANY PARTY shall be given reasonable time to correct, or cause to be corrected, any such deficiencies prior to use by CONTRACTOR of such ITEMS or EXISTING PROPERTY.

(r)     Protection of WORKSITE. CONTRACTOR shall perform all WORK in such manner as to cause minimum interference with the operations of the applicable COMPANY PARTY, other contractors on the WORKSITE, and the surface owners of the WORKSITE and shall take, and cause each PERSON within CONTRACTOR GROUP to take, all necessary precautions (including those required by the COMPANY PARTY's safety regulations) to protect the WORKSITE and all persons and property thereon from damage or injury.

(s)     No Exclusivity. CONTRACTOR acknowledges and agrees that nothing herein shall be deemed to grant CONTRACTOR, and CONTRACTOR is not hereby acquiring, any exclusive rights to provide WORK or any other services to any COMPANY PARTY. A COMPANY PARTY may purchase WORK or other services from THIRD PARTIES other than CONTRACTOR. No COMPANY PARTY makes any commitment to purchase WORK from CONTRACTOR unless and until a PURCHASE ORDER is issued by such COMPANY PARTY.

**8.0     RELATIONSHIP OF PARTIES**

(a)     Independent Contractor. In the performance of any WORK by CONTRACTOR for a COMPANY PARTY, CONTRACTOR shall be deemed an independent contractor. A COMPANY PARTY shall have no right or authority to supervise or give directions or instructions to the employees, agents, or representatives of CONTRACTOR GROUP. CONTRACTOR retains the authority and right to direct and control all the details of the WORK; however, all WORK shall meet the APPROVAL of the applicable COMPANY PARTY and shall be subject to the general right of inspection and be performed in accordance with the CONTRACT. It is the understanding and intention of the PARTIES that no relationship of master and servant or principal and agent shall exist between the COMPANY PARTY and CONTRACTOR GROUP, and that all WORK or services covered herein shall be performed at the sole risk of CONTRACTOR GROUP. In conducting the WORK, CONTRACTOR GROUP shall:

statement of the understanding between the PARTIES and supersedes all related prior proposals and understandings, whether oral or written. This AMENDMENT may be executed in one or more counterparts, each of which shall be deemed an original instrument, but all of which taken together shall constitute one and the same AMENDMENT.

**IN WITNESS WHEREOF**, the COMPANY and CONTRACTOR have caused this AMENDMENT to be executed by their duly authorized representatives as of the AMENDMENT EFFECTIVE DATE.

**COMPANY:**

**Type OCI Company Name**

By: _Brent Frahm_

Name: _Brent Frahm_

Title: _Manufacturing Director_


**CONTRACTOR:**

Type Contractor's Legal Name

By: _Kevin Wauters_

Name: Kevin Wauters

Title: Sr. Vice President

# Exhibit B

**Witness statement**

**OCI nitrogen Iowa**

On the day of September 15th, 2023, at approximately 2:30 pm we received a call from JVIC to meet them on the 147th level of the #100 building to walk over a first line break job that they wanted to perform. The foreman Carlos from JVIC showed me the line that he was asked to unbolt and remove. Carlos then showed me the riser line going through the next deck above that was opened already on that system and filled with liquid. The liquid did not have any smell to it when I was up there. Carlos walked me through the process that he and operations went over about how to unbolt the riser with liquid into a catch basin located on the 147th deck with a hose going to a drain. The riser line at that point was thought to be clogged, so I explained to Carlos that his people should open that very slowly and away from themselves, so that the liquid could be caught in the basin. Carlos then showed me the bleeder valve on the bottom of the system on the north side of the 147th deck that was opened. I then asked Carlos if he verified with operations that the bleed point was verified clear, and he responded with yes. There were two operators hanging around up there on the 147th deck as well waiting for JVIC to start the work, I introduced myself to them and explained that I'm here working with the safety department. After speaking with Carlos about the work scope, the two workers were fully geared up in chemical suits, boots and breathing air masks. They were both taped up except for the full-face masks at that time. I reminded Carlos that they need to have the full-face masks taped up before breaking the first bolt. At that point Carlos stated that they could not start yet because the bottle watch was now gone. I then told Carlos that I was going to be leaving and if he had any issues or questions to give safety a call back.

Joe Dominguez

JCL Safety

9/16/2023 8:00 am

# Exhibit C

Date: 9/17/2023

Date of Interview: 9/16/2023

Time of Interview: ≈1400

Interviewee: Jesus Carlos Villarreal

Disclaimer: Below is my, Sammie Jones, recollection of Mr. Villarreal response and testimony to the incident, which took place on 9/15/23, involving to employee being sprayed with Anhydrous Ammonia

Mr. Villarreal recalled the following personnel participating in the pre-job walk, which included verification of zero-energy:

        Patrick Long – OCI Field Operator
        Josh Miller – OCI Field Operator
        Joe Dominguez – OCI Contractor Safety Representative
        Joe Garza – JVIC Safety Representative
        Jesus Carlos Villarreal – JVIC Job Foreman

Mr. Villarreal recalled that the entire system was walked by the above-mentioned personnel and all zero-energy location identified were proven open, to include "rodding" each location.

Mr. Villarreal recalled being given instructions by Operations on how to tell if the pneumatic valves (XV21004 and XV21006) were open or closed, by the location of the stems.. With this information, he was able to confirm both XV's were in the open position, giving confidence that the valve utilized to verify zero energy was appropriate. All party agreed to move forward with the scope.

Villarreal also noted the check valve upstream of XV21004; however, with XV21004 open, he had not concern with trapped pressure.

Mr. Villarreal informed his team that he walked the system, and it was safe for them to go to work.

Mr. Villareal recalls, during the removal of XV21006 a large amount of trapped ammonia water was still in the piping. This was due to the configuration, which include large elbow sweep. The team stopped, notified operations, and go permission to move forward. Contents of the fluid was not overwhelming, but did set off gas detectors in the building, below where they working.

When XV21006 was removed, Mr. Villarreal indicated he looked inside the valve to verify that it was truly open and it was. This increased in confidence that XV21004 was open, based on its stem location in relation to XV21006.

When conducting the removal of XV21004, full line break PPE was worn to break the downstream side of the valve. The team members took a break, away from the work area to hydrate. While doing this, the removed the line break PPE. Mr. Villarreal recall Marcelo Perez removing just his chemical jacket and David Sanchez remove both the jacket and bibs.

Prior to return to break the inlet, OCI Operator Pat Long informed the team that inlet in no longer a line break since the outlet has already been broken. Mr. Villarreal felt uncomfortable with this and recommended that still wear full line break PPE. Marcelo and David sided with OCI, as they to believe this was no longer a line break. Villarreal was persuaded but encourage them to at least wear their

## Follow-up Interview Summarization

supplied are respirator and they complied. Mr. Villarreal confirmed, no safety representative (JVIC or OCI) was apart of the conversation to derate PPE.

Marcelo was wearing just is bids and respirator and David wore his bids and respirator. The two technicians began breaking the flanges.

# Exhibit D

**JVIC**
a Zachry Group company

Page ___1___ of ___2___ Total Pages

### STATEMENT of

☐ **Employee**    ☑ **Supervisor**    ☐ **Witness**

I, __Juan Flores__, Telephone# __281-701-4327__, give this statement of my own free will, without being subject to threats or promises of immunity to disciplinary action or retaliation.

Date of the Incident/Event: __9-15__          Time of the Incident/Event: __4:30__

Client Location/Facility: __100__          Project Name: __812391__

Unit/Task Location at time of Incident/Event: __147 level__

Names of all people involved in the Incident/Event:
__Ralf, Carlos, Villareal, Jesus perez, Marcelo perez, david Sochey,__

Names of all witnesses or other people who might know about the Incident/Event:
_____

What was the Incident/Event about (injury, accident, personal dispute, etc…)?
__2 guys got exposed with Ammonia__

What you were doing at the time of the Incident/Event: __I was looking at some equipment.__

What did you see or hear occur, and what was the chain of events (provide as much detail as you can, using extra pages as necessary)? __a loud burst and a cloud. I was about 30 ft from incident.__

What other relevant information you can remember about the incident or the people involved (use extra pages if necessary)? __I went up there to check on the guys. When I got up there the guys were working on the second valve unbolting the last nuts, there was pressure, they called ops, they stood up.__

I have read each page of this statement consisting of ___1___ page(s), each page of which bears my signature. Corrections will bear my initials, and I certify that the facts contained herein are true and correct.

Signature: _____

Printed (Full Name): __Juan Flores__          Date: __9-15-23__

Page __2__ of __2__ ____ Total Pages

Statement Continuation Sheet

and checked everything. It was good, ops said let it bleed
out. So it stopped releasing pressure, there were only
to 2 guys under fresh air with no suits on, I turned.
and. walked away to look at some othe equipment
when i heard a burst, i turned around and it was
a big cloud and everybody started running.
we We all went down and did a count forthe
guys. 2 of them were at in the showers.
2 ops were the whole time when the guys
got exposed. Carlos Villareal told me
when asked about the suits being downgraded.
He said ops told them they can down grade
since everthing was already opened and cleared.

I have read each page of this statement consisting of ___2___ page(s), each page of which bears my signature. Corrections will bear my initials, and I certify that the facts contained herein are true and correct.

Signature: _____

Printed (Full Name): Juan Flores                    Date: 9-15-23

# Exhibit E


a Zachry Group company

Page ___/___ of ___3___ Total Pages

## STATEMENT of

☑ **Employee**        ☐ **Supervisor**        ☐ **Witness**

I, _Marcelo Perez_____, Telephone# _956-310-8080_____, give this statement of my own
free will, without being subject to threats or promises of immunity to disciplinary action or retaliation.

Date of the Incident/Event: _9-15-23_____    Time of the Incident/Event: _3:30 PM_____

Client Location/Facility: _100 / 1147 level_    Project Name: _812391_____

Unit/Task Location at time of Incident/Event: _Unit 100_____

Names of all people involved in the Incident/Event:
_David Sanchez_____

Names of all witnesses or other people who might know about the Incident/Event:
_Juan Flores, Rafael Reyes, Jesus_____

What was the Incident/Event about (injury, accident, personal dispute, etc…)?
_Amonia_____

What you were doing at the time of the Incident/Event: _Opening a control valve_____

What did you see or hear occur, and what was the chain of events (provide as much detail as you can, using
extra pages as necessary)? _The control valve have some pressure and we_____
_let it bleed and when no pressure was coming out_____
_I open it and alot of amonia that look like steam come out_____

What other relevant information you can remember about the incident or the people involved (use extra pages if
necessary)? _When the amonia come out it was all over the place_____
_me and david start running but we can't even see_____
_nothing_____

I have read each page of this statement consisting of _____ page(s), each page of which bears my
signature. Corrections will bear my initials, and I certify that the facts contained herein are true and correct.

Signature: _Marcelo Perez_____

Printed (Full Name): _Marcelo Perez_____        Date: _9-16-23_



Page __2__ of __3__ Total Pages

Statement Continuation Sheet

Me and david we was working in a control valve we already take out 1 check valve and 2 control valves and in the 3 control valve operations tell us that we dont need the full chemical suit so we start doing it no chemical suit and fresh air when we were Taking out nuts some pressure come out we can feel it and hear it so operations tell us to let the Pressure get out and when the pressure stops i tell david that atleast less do it with fresh air cause the anonia was strong and i couldn't bread So we just Put our fresh air wi/the the 5 min Pack and i lift the control valve with the chain fall and more Pressure was coming out operations tell us that let it bleead again and when it stops i Pull the chain to open it more and alot of Pressure Start coming out i try to bring it down but i couldn't cause it was lik steam all around of us we cant even see nothing i Start to run and david too i was crushing everyware trying to get out but

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature. Corrections will bear my initials, and I certify that the facts contained herein are true and correct.

Signature: _____

Printed (Full Name): _Marcelo Perez_____    Date: _9-16-23_



Page 3 of 3 Total Pages

Statement Continuation Sheet

i t was hurd cause i cant not see nothing
i remember that david run toward the ~~stairs~~ Exit
but i run to another way and i start feeling
that my arm, chest, and back was burning
~~that~~ i dont remember how much time i was
in that anonja steam but when I saw the
Exit i run and open my 5 minvte Pack and
dissconect the fresh air hose and then like in 30
Second after david was bearly coming out i tought he
was already out cause at the begsining he run
towards the exit. and then we all run out on
the stair to go to a Sufetx Sower and then
they take me to the hospital.

I have read each page of this statement consisting of _____ page(s), each page of which bears my signature. Corrections will bear my initials, and I certify that the facts contained herein are true and correct.

Signature: _Mmb Pur l_

Printed (Full Name): _Marcelo Perez_    Date: _9-16-22_

# Exhibit F

# LINE/ EQUIPMENT OPENING CHECKLIST

This form is used to identify current hazards associated with Process Safety Management. This form also serves as a reminder for steps to take during Line/ Equipment opening work. This process is required to complete prior to performing work list. requires employees to cut, break, or otherwise open any process equipment/ piping. This form does not take the place of the JVIC TSA requirements.

**SUPERVISOR:** _JESUS CARLOS VILLARREAL_   **DATE:** _09/15/23_

**WORK ORDER # OR PROJECT NAME:** _XV 21004   WO# 6102483_ **CRAFT:** _MECHANICAL_

**UNIT:** _100 BLDG. UREA._   **SPECIFIC LOCATION OF TASK:** _147 FLE._

| | YES | NO | N/A |
|---|---|---|---|
| Has job walk down with operations been completed? | ✓ | | |
| Have equipment isolation points been identified? | ✓ | | |
| Is blind list verified and on location? | ✓ | | |
| Has the "Try" step been performed by operations and witnessed by JVIC employees? | ✓ | | |
| Have "traps" been evaluated (low point breaks, back pressure, cycling systems)? | ✓ | | |
| Have Line Openings been verified to be within the system isolation? | ✓ | | |
| Have all JSA's, Hazard Analysis been performed as required? | ✓ | | |
| Does this line break involve a flare line opening? | | | ✓ |
| *Note that this checklist does not apply to Flare Line Breaks. Any linebreak involved with the flare must adhere to the JVIC Flare Line Opening Policy/Procedure and related paperwork.* | | | |
| Have Isolation methods been verified to be in place (keys, tags, lockbox, lists, etc.)? | ✓ | | |
| Has the crew obtained a permit to perform work on the system? | ✓ | | |
| Has Operations completed their portion of the approval process (Permit) to perform the work? | ✓ | | |
| Has JVIC personnel completed their portion of the acceptance process (Permit)? | ✓ | | |
| Have all necessary signatures been obtained by Operations? | ✓ | | |
| Have all necessary signatures been obtained by JVIC employees? | ✓ | | |
| Full chemical suit and fresh air are required for all First Line Breaks that contain hazardous materials or ANY line break that can't be verified as de-pressured and gas tested. For line breaks concerning non-hazardous substance or cleared lines verified by depressurization and gas testing refer to JVIC / Client / MSDS requirements and checklist below. | | | |
| Is there a minimum of one A class mechanical craftsman assigned to perform First Line break? | ✓ | | |
| Has proper PPE been determined based on contents and JVIC / client procedure? | ✓ | | |
| Is barricade erected sufficient for Line Opening?(ie.Dropped Object / Splash / Downwind ) | ✓ | | |
| Has work platform been evaluated to ensure employees can open line "down and away"? | ✓ | | |
| Is adequate containment in place to capture any spill/leaks that may occur during line break? | ✓ | | |
| Are all non-essential personnel positioned upwind from the Line Break (Bottlewatch, etc.)? | ✓ | | |
| Cold Cut: Are the JVIC Cut Line Policy/Procedures in place? | | | ✓ |
| Cold Cut: Has equipment contents been checked to ensure LEL at or below 10ppm? | | | ✓ |

**IF "NO" IS ANSWERED TO ANY OF THE ABOVE QUESTIONS, EXPLAIN (Project Manager and Site Safety must Approve)**

---

**LIST AND DESCRIBE MSDS REQUIREMENTS FOR A PARTICULAR JOB**

**Product:** _Ammonia_

**PPE:** _FULL SLICKER / SUPPLIED AIR_

**First Aid/Emergency Procedures:** _IFCO RESCUE_

**DOWNGRADING PPE AFTER FIRST LINE BREAK (IF APPLICABLE)**
WHY WILL CREW BE DOWNGRADING PPE? WHAT STEPS/ MEASURES HAVE BEEN TAKEN TO JUSTIFY DOWNGRADING PPE?
Examples: Double Block & Bleed, Blinds Installed, Chemical Wash, Steam Cleaned, Flushed/ Drained, Atmospheric Testing, etc.

**Explain New PPE Requirements:** _BLOCKED AND BLEED_

**APPROVAL SIGNATURES FOR LINE BREAK**
Supervisor/Safety must evaluate and approve all First Line Breaks. Supervisor/Designee must be present for the First Line Break.

Supervisor Signature / Designee                    Safety Rep Signature / Designee

**APPROVAL SIGNATURES FOR DOWNGRADE**
Signatures must be obtained for any work beyond First Break where crew will not be utilizing the same First Break PPE.

Project Manager/ Designee                          Site Safety Supervisor / Designee